# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

COTAPAXI CUSTOM DESIGN AND
MANUFACTURING, LLC,

            Plaintiff,

    -v-

CORPORATE EDGE, INC., et al.,

          Defendants.

Document Electronically Filed

Civil Action No. 06-5183 (JAG)

Return Date: January 22, 2007

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

---

**LOWENSTEIN SANDLER PC**
Attorneys at Law
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
Attorneys for Defendants

On the Brief:
   Stephen R. Buckingham
   Matthew J. Atlas

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT .............................................................1

I.   STATEMENT OF FACTS.................................................3

II.  THE COURT SHOULD DISMISS THE COMPLAINT WITH
     PREJUDICE FOR FAILURE TO STATE A COLORABLE
     CLAIM OF DESIGN PATENT INFRINGEMENT............................13

     A.   Governing Legal Standards.................................................13

          1.   Rule 12(b)(6) Motion to Dismiss ...................................13

          2.   Design Patent Infringement ...........................................15

     B.   The LAMISIL and FAMVIR Pens Do Not Literally
          Infringe the '951 or '556 Cotapaxi Patents.............................19

          1.   The LAMISIL Pen Is Not "Substantially the
               Same" In Overall Appearance As the '951 or '556
               Patent Designs .........................................................19

          2.   The LAMISIL Pen Does Not Appropriate the
               Points of Novelty of Either the '951 or '556
               Patent Designs .........................................................21

          3.   The FAMVIR Pen Is Not Substantially Similar to
               Either the '951 or '556 Patent Designs...........................24

          4.   The FAMVIR Pen Does Not Appropriate the
               Points of Novelty of Either the '951 or '556
               Patent Designs .........................................................25

     C.   The Doctrine of Equivalents Does Not Apply........................26

III. IN THE ALTERNATIVE, THE COURT SHOULD CONVERT
     THE MOTION TO DISMISS TO A MOTION FOR SUMMARY
     JUDGMENT AND GRANT SUMMARY JUDGMENT .................27

IV.  CONCLUSION .................................................................29

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                      <u>**Page**</u>

<u>Avia Group Int'l, Inc. v. L.A. Gear Ca., Inc.</u>, 853 F.2d 1557 (Fed. Cir. 1988) .27, 28

<u>Buck v. Hampton Tp. School Dist.</u>, 452 F.3d 256 (3d Cir. 2006)............................14

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ..........................................................27

<u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.</u>, 162 F.3d 1113
       (Fed. Cir. 1998)......................................................... 15, 16, 17, 18, 19, 24, 26

<u>Gorham Co. v. White</u>, 81 U.S. 511 (1871) .............................................................16

<u>Green v. Doukas</u>, 205 F.3d 1322 (2d Cir. 2000) ......................................................27

<u>Hughes v. Rowe</u>, 449 U.S. 5 (1980) ........................................................................14

<u>Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.</u>, 458 F.3d 244 (3d Cir.
       2006) ...............................................................................................................14

<u>Lawman Armor Corp. v. Winner Int'l</u>, 437 F.3d 1383 (Fed. Cir. 2006) .................17

<u>Litton Systems, Inc. v. Whirlpool Corp.</u>, 728 F.2d 1423 (Fed. Cir. 1984) .......18, 19

<u>Mas v. Owens-Illinois Glass Co.</u>, 222 F.2d 889 (3d Cir. 1955) ..............................28

<u>Metrokane, Inc. v. Wine Enthusiast</u>, 185 F. Supp.2d 321 (S.D.N.Y. 2002) 14, 15, 27

<u>Oddzon Products, Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396 (Fed. Cir. 1997) .......15, 16

<u>Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.</u>, 998 F.2d 1192 (3d
       Cir. 1993).......................................................................................................15

<u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974).................................................................13

<u>Sun Hill Industries, Inc. v. Easter Unlimited, Inc.</u>, 48 F.3d 1193 (Fed. Cir.
       1995) ............................................................................... 16, 17, 18, 24, 26

U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002) ........................14

Unette Corp. v. Unit Pack Co., Inc., Civ. A. No. 84-2166, 1985 WL 5989
    (D.N.J. March 8, 1985), *affirmed*, 785 F.2d 1026 (Fed. Cir. 1986)..............29

In re Westinghouse Sec. Litig., 90 F.3d 696 (3d Cir. 1996)....................................14

## Statutes

Fed. R. Civ. P. 56(c)................................................................................................27

Federal Rule of Civil Procedure 12(b)(6) ....................................................13, 14, 29

## Miscellaneous

*"A Guide to Filing a Design Patent Application*," United States Patent and
    Trademark Office....................................................................................4, 6, 10

Defendants Corporate Edge, Inc., Scott Levy, and Robyn Saltzman ("Defendants") respectfully submit this Memorandum of Law in support of their motion pursuant to Rule 12(b)(6) to dismiss the Complaint filed by Plaintiff Cotapaxi Custom Design and Manufacturing LLC ("Cotapaxi"), or in the alternative, as permitted by Rule 12(b)(6), for summary judgment under Rule 56.

## PRELIMINARY STATEMENT

Plaintiff Cotapaxi, a disappointed competitor, is also a frivolous litigant. This suit stems from the fact that Cotapaxi lost out in a competitive bid to Defendant Corporate Edge in sales of promotional pens to a common client, New Jersey-based pharmaceutical company, Novartis, to promote the branded drugs Lamisil® and Famvir®.  Rather than meet competition on a fair basis, in a fit of sour grapes, and in an effort to inflict economic loss on its competitor Corporate Edge, Cotapaxi, a New Jersey-based business, sued New Jersey-based Corporate Edge *in California* for design patent infringement relating to sales to New Jersey-based Novartis.  Moreover, Cotapaxi also sued personally Corporate Edge's President Scott Levy and Sales Representative Robyn Saltzman.  When the District Court found there was no basis whatsoever for personal jurisdiction over any of the Defendants in California, that suit was dismissed.[1]  Cotapaxi has now re-filed its design patent infringement case in this Court, once again suing individuals as well

---

[1]   The first action, <u>*Cotapaxi v. Corporate Edge et al.*</u>, CV-06-3570 (SJO), filed in the Central District of California, was dismissed on October 11, 2006.

as Corporate Edge, and forcing the Defendants to incur significant legal fees to beat back Cotapaxi's baseless design infringement claims.

As will be demonstrated below through side-by-side comparisons of photographs and the patent drawings, the Corporate Edge pens accused of infringement are so unlike the pen designs patented by Cotapaxi that this Court can and should summarily rule on the claims and dismiss this suit with prejudice. Apart from the fact that the Corporate Edge pens have elongated cylindrical bodies that taper to a writing point, pocket clips and comfort grips--features common to legions of ballpoint pens on the market for many years--there is little similarity between the Corporate Edge pens and the designs claimed in the Cotapaxi patents.

This case is ripe for dismissal pursuant to Rule 12(b)(6), as the patents were attached to and referenced in the Complaint, and the Corporate Edge pens were clearly identified in the Complaint by description and photographs attached as exhibits to the Complaint.  Moreover, the prior art relevant to the patents in suit was cited on the face of the patents, and is available as undisputed public patent documents.  Therefore, to render a judgment of dismissal, this Court need not consider any evidence outside the pleadings other than undisputed additional photographs of the accused pens and undisputed publicly-available government documents, as permitted under Third Circuit law.

Alternatively, if the Court believes it more appropriate procedurally, because there are no genuine issues of material fact, the Court should under Rule 12(b)(6) convert the motion to dismiss to a motion for summary judgment of non-infringement and grant summary judgment in favor of the Defendants.

## I.    <u>STATEMENT OF FACTS</u>

Cotapaxi alleges in its Complaint that the Defendants infringed two design patents, United States Patent No. D508,951 ("the '951 patent") and U.S. Patent No. D521,556 ("the '556 patent"), through their sales of two models of ballpoint pens. <u>See</u> Complaint, ("Complt.") ¶¶ 15-16, 24, Ex. A, Atlas Decl.[2]  The Complaint is based on the sale by Corporate Edge of two pens to a New Jersey pharmaceutical company as promotional items bearing the trademarks of two branded drugs, Lamisil® and Famvir®, for distribution to medical professionals (hereafter referred to individually as the "LAMISIL Pen" and the "FAMVIR Pen", or collectively as the "Accused Pens").  Complt." ¶¶ 17, 18.  Although the '951 and '556 patents claim two separate ornamental pen designs and the LAMISIL Pen and the FAMVIR Pen consist of very different pen designs, Cotapaxi alleges that each of the two Accused Pens infringes both the '951 and '556 patents.

---

[2]    References in this Memorandum to "Ex. __", refer to the Exhibits attached to the Declaration of Matthew J. Atlas ("Atlas Decl."), dated December __, 2006 filed in support of this motion.

**(A)    The Design of the '951 Patent**

The ornamental design claimed in the '951 patent is of a pen with a particular pocket clip and a lower grip portion having a series of rows of five octopus-suction-disc-like protrusions, or nubs, extending from the grip area.  See Atlas Decl., Exhibit A (exhibit to Complaint, Figs. 1-4).  The claimed design is depicted in Figure 1 of the '951 patent, reproduced below:



As can be seen above, the claimed design of the '951 patent also depicts a particular rectangular pocket clip with slightly rounded corners that extends down over a portion of the body of the pen, for clipping to a shirt pocket or other material.  The claimed pocket clip also has a flat transparent or refractory surface or window, as indicated by the use of shading lines on the pocket clip surface.  See Ex. A, Figs. 1, 2; see also *A Guide to Filing a Design Patent Application*, p. 18, United States Patent and Trademark Office, http://www.uspto.gov/web/offices/com /iip/pdf/brochure_05.pdf, excerpts of which are attached as Ex. B to the Atlas Decl.

The pen design claimed in the '951 patent also features a "click-top" that is depressed to push the nib, or writing portion, of the pen out of the opposite end of

the body.  As can be seen in the following figure from the '951 patent, the click-top portion of the pen has a sleeve or collar that fits inside the body of the pen, and has a button-like protrusion on top of a flat surface, as seen in Figures 2, 3, and 4:



*Fig. 4*                    *Fig. 6*

An end-on, or axial view, of the design, depicted in Figure 6 (reproduced above), shows that the click-top design has a flat side created by the pocket clip, and a rounded side.

**(B)**     **The Design of the '556 Patent**

With the exception of very different grip designs, the pen designs claimed in the '951 patent and the '556 patent (attached as Exhibit B to the Complaint), are otherwise identical.  The '556 patent claims a pen design having the same particular pocket clip as the '951 design and a textured grip area.  See Complt., Exhibit B, Figs. 1-4.  The claimed '556 design is reproduced below:



*Fig. 1*

The grip area of the '556 patent design claims a sand-like or rough-textured grip, as indicated by the use of sand texture markings.  See *A Guide to Filing a Design Patent Application*, Exh. B, Atlas Decl., at 18.  The pen design claimed in the '556 patent has a particular pocket clip identical in all respects to the pocket clip of the '951 patent design, including the rectangular clip with slightly rounded corners, the flat face containing a transparent or reflective material or window.  Like the '951 design, the pen design of the '556 patent has a click-top structure that resides in a sleeve or collar and has a button-like protrusion on top of a flat surface.  Similarly, from an end view the click-top has a flattened side, created by the pocket clip, and a rounded side.



FIG. 4                    FIG. 6

**(C)   The Accused LAMISIL and FAMVIR Pens**

The LAMISIL and FAMVIR pens that are at issue in this suit are depicted in photographs that are attached to the Complaint as Exhibits C and D.  Those pens have the following appearances[3]:

---

[3]   The photographs of the LAMISIL and FAMVIR pens used in this Brief are used to supplement the photographs attached to the Complaint, but represent the identical products.





The accused LAMISIL and FAMVIR pens have none of the ornamental features claimed in the '951 and '556 design patents.[4]  Neither pen has the octopus grip of the '951 patent or the rough-textured grip of the '556 patent.  Instead, each has a smooth rubber grip commonly found in mass-produced "comfort grip" pens sold in most stores.

Neither the LAMISIL nor the FAMVIR Pen has a rectangular pocket clip with a transparent or refractory surface or window, as claimed in both the '951 and '556 patents.  Instead the LAMISIL Pen has a predominately ovaloid pocket clip with a rectangular end, and the FAMVIR Pen has a unique "bee" shaped pocket clip with a semi-circular end.

---

[4]   Copies of the photographs of the LAMISIL and FAMVIR pens used in this Memorandum are attached as Exhibit C to the Atlas Decl.



**LAMISIL PEN**            **FAMVIR PEN**            **'951 Patent – Fig. 2**
                                                    **'556 Patent - Fig. 2**

In addition, neither the LAMISIL nor the FAMVIR pen has the sleeve/collar

structure connecting the click-top to the pen body.



**LAMISIL PEN**            **FAMVIR PEN**            **'951 Patent - Fig. 4**
                                                    **'556 Patent - Fig. 4**

In contrast to the half-round, half square click-top end with button-like

protrusion of the '951 and '556 patents, the end of the click-top of the LAMISIL

pen is flat and substantially square as viewed from an "end-on" or axial view.

Also, the LAMISIL pen does not have a button-like protrusion, but is flat.



**LAMISIL PEN (end view)**        **Round Side**        **Button-Like Protrusion**
                                  **'951 Patent - Fig. 6**        **'951 Patent - Fig. 3**

### (D)    The Prior Art

As will be explained below, under the design patent laws, only the <u>novel</u> ornamental aspects of Cotapaxi's patented designs, or "points of novelty," are protectable against infringement.  Cotapaxi may not claim rights in ornamental elements that are part of the prior art.  Thus, the fact that the Defendants' pens have elongated cylindrical bodies in common with the pen designs of the '951 and '556 patents, for example, is irrelevant to the issue of infringement, as virtually every writing instrument made in the last one hundred years or more has had an elongated cylindrical body.

During the prosecution of both of the Cotapaxi patents, the Patent Examiner cited several prior art references as bearing on the patentability and scope of the design claims sought by Cotapaxi.  Three of those references have particular significance to the scope of the allowed claims of the '951 and '556 patents.

The Volk reference, United States Patent No. D498,496, cited on the face of the '951 and '556 patents, claims a pen top comprising a rectangular pocket clip

with a rounded clip end, which is integrated with a click-top.  See Ex. D, Atlas

Decl.  The rectangular face of the prior art Volk pocket clip is substantially the

same as the Cotapaxi pocket clip except that it has a more rounded end and does

not have a transparent or refractory window surface.  Instead, as indicated by the

particular shading used, the Volk pen top is metallic.  See Ex. B, Atlas Decl.

(USPTO Guide to Filing A Design Patent Application).



**Volk '496 patent Figures 1 and 4**          **'951 and '556 patents Figures 1 and 2**

The top of the Volk click-top is flat, and from an end view the click-top is

rounded on the side away from the pocket clip and flat on the side near the pocket

clip.  The end view of the prior art Volk design is the same shape as the end view

of the Cotapaxi designs except that it lacks the button-like protrusion.



**Volk, Figure 6**          **'951 and '556 patents, Figure 6**

-10-

A second material reference cited by the Patent Examiner on the face of the '556 patent was the Cetera reference, United States Patent No. D495,365, which claims a pen design comprising a sleeve or collar that fits inside the body of the pen, similar to the sleeve/collar depicted in the '951 and '556 patents, but differing slightly in shape.  See Ex. E, Atlas Decl.



**Cetera, Figure 4**          **'951 and '556 Figure 3**

Thus, the inclusion of an extraneous sleeve or collar is not novel to the '951 and '556 patents, but rather, at most, the particular shape of the sleeve/collar would constitute a point of novelty.  The Cetera design also includes an annular ring at the end of the comfort grip farthest from the pen point.



**Cetera, Figure 4**

A third significant reference cited by the Patent Examiner on the face of the '556 patent was the Beneyto reference, United States Patent No. D446,243, which claims a pen design comprising a textured hand grip substantially similar to the hand grip of the '556 patent.  The Beneyto design also has an annular ring located

at the junction of the comfort grip and the pen body, Ex. F, Atlas Decl., which is slightly narrower than the annular ring in the '951 and '556 patent designs:



**Beneyto, Figure 1**          **'556 patent, Figure 2**

A fourth reference, which was not cited by the Patent Examiner during prosecution of the '951 and '556 patents, but which has an issue date of March 18, 2003 and therefore constitutes prior art relevant to interpreting the scope of the '951 and '556 patents, is the Lecce reference, United States Patent No. D471,931. Ex. G, Atlas Decl.   Lecce claims a writing instrument comprising a smooth comfort grip similar to the grips of the LAMISIL and FAMVIR pens, and, also includes an annular ring located at the junction of the comfort grip and the pen body, which is the same size as the annular ring in the '951 and '556 patent designs:



**Lecce, Figure 1**          **'951 patent, Figure 1**          **'556 patent, Figure 1**

In view of the above prior art to the '951 and '556 patents, the points of novelty in the '951 patent consist essentially of: (1) the octopus grip, (2) the transparent or refractory surface window of the pocket clip, (3) the button-like protrusion on the end of the click-top, and (4) the sleeve or collar at the junction of the click-top and the pen body in the particular shape depicted.  The points of novelty of the '556 patent consist essentially of (1) the transparent or refractory surface window of the pocket clip, (2) the button-like protrusion on the end of the click-top, and (3) the particular shape of sleeve or collar at the junction of the click-top and the pen body.  As demonstrated above, other ornamental features in the '951 and '556 patents were present in the prior art and therefore do not constitute points of novelty.

## II.   THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A COLORABLE CLAIM OF DESIGN PATENT INFRINGEMENT

### A.   Governing Legal Standards

#### 1.   Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for judgment dismissing claims asserted against them "for failure to state a claim upon which relief can be granted."  In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all well pleaded facts and views those facts in a light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236

(1974).  However, a complaint can be dismissed under Rule 12(b)(6) if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hughes v. Rowe, 449 U.S. 5, 10 (1980).  Likewise, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Metrokane, Inc. v. Wine Enthusiast, 185 F. Supp.2d 321, 324 (S.D.N.Y. 2002).

Moreover, on a Rule 12(b)(6) motion, the Court may "consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied upon in their suit."  Id.; see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006)("[t]o resolve a 12(b)(6) motion, a court may properly look at public records . . . in addition to the allegations in the complaint"); Buck v. Hampton Tp. School Dist., 452 F.3d 256, 260 (3d Cir. 2006)(on Rule 12(b)(6) motion, district court may consider documents attached to, incorporated by reference or integral to complaint, and items subject to judicial notice or matters of public record); U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002)("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment"); In re Westinghouse Sec. Litig., 90 F.3d 696, 707 (3d Cir. 1996)(district court properly considered undisputedly authentic documents attached to defendant's motion and

did not err in refusing to convert motion to dismiss to motion for summary judgment); Pension Ben. Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

### 2.  **Design Patent Infringement**

"Design patents are limited to what is shown in the application drawings and are narrow in scope." Metrokane, 185 F. Supp.2d at 326.  A design patent "only protects the novel, ornamental features of the patented design." Oddzon Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).  The design patent laws "were not intended to empower patent owners to harass competitors who are marketing devices which happen to incorporate parts whose shapes resemble insignificant physical details of the patent owner's products." Metrokane, 185 F. Supp. 2d at 328.

A court determines whether a design patent is infringed "by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." Id. at 1404.  The claim in a design patent consists of the patent drawings.  Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116 (Fed. Cir. 1998).  To establish infringement, a plaintiff must prove that "the accused device is 'substantially the same' as the claimed design."

Sun Hill Industries, Inc. v. Easter Unlimited, Inc., 48 F.3d 1193, 1196 (Fed. Cir. 1995).

### a.   The Ordinary Observer Test

To determine whether the accused products are "substantially the same" as the patented design, the court applies an "ordinary observer" test.  Under that test, the accused product and the patented design must "have the same general visual appearance, such that it is likely that the purchaser would be deceived into confusing the design of the accused article with the patented design."  Goodyear, 162 F.3d at 1118; Gorham Co. v. White, 81 U.S. 511, 528 (1871)("if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other").

In applying the ordinary observer test, "[d]ifferences in the design are relevant, as well as similarities."  Goodyear, 162 F. 3d at 1117.  Because the focus is on the overall visual appearance, "[t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar."  Oddzon, 122 F.3d at 1405.

**b.**     <u>The Points of Novelty Test</u>

In addition to proving that designs are "substantial the same" under the "ordinary observer" test, a plaintiff must also prove that the accused product appropriated the "points of novelty" of the patented design. <u>Sun Hill</u>, 48 F.3d at 1197. The purpose of this test "is to focus on those aspects of a design which render the design different from prior art designs." <u>Lawman Armor Corp. v. Winner Int'l</u>, 437 F.3d 1383, 1385-86 (Fed. Cir. 2006). The point of novelty test "requires that the accused product 'appropriate the novelty in the patented device which distinguishes it from the prior art'." <u>Sun Hill</u>, 48 F.3d at 1197. "'New' designs frequently involve only relatively small changes in the shape, size, placement or color of elements of old designs. It is those changes in and departures from the old designs that constitute the 'points of novelty' in the patented new design." <u>Lawman</u>, 437 F.3d at 1386.

Similarity of overall appearance alone is "an insufficient basis for a finding of infringement unless the similarity embraces the points of novelty of the patented design." <u>Goodyear</u>, 162 F.3d at 1118. "[E]ven though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art." <u>Lawman</u>, 437 F.3d at 1386. A court may not "evade the point of novelty test by relying on the claimed overall design as the

-17-

point of novelty." Sun Hill, 48 F.3d at 1197. While the design as a whole is patented, "the distinctions from prior designs informs the court's understanding of the patent." Goodyear, 162 F.3d at 1118. Therefore, absent substantial similarity with respect to the points of novelty, an accused device will not infringe "no matter how similar two items look." Litton Systems, Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984).

The points of novelty "are usually determinable based on the prosecution history" of the patent in suit by reference to the prior art patents cited by the Patent Examiner. Goodyear, 162 F.3d at 1118. Courts, however, may rely on any prior art patents proffered by the parties. See Id. at 1119-21; Lawman, 437 F.3d at 1384-85. Where a field is crowded with similar art, the patented design is entitled to a narrow scope of protection. Goodyear, 162 F.3d at 1121.

### c.   Doctrine of Equivalents

Although the doctrine of equivalents applies to design patent cases, "it applies only when the accused product includes features equivalent to the novel claimed design features." Sun Hill, 48 F.3d at 1199. "A patentee cannot invoke the doctrine to evade scrutiny of the point of novelty, because to do so would 'eviscerate the purpose of the 'point of novelty' approach which is to focus on those aspects of a design which render the design different from prior art designs." Id. Moreover, where a field is crowded with prior art references relating to the

design of the same type of product, courts "must construe the range of equivalents very narrowly."  Litton, 728 F.2d at 1444.

**B.     The LAMISIL and FAMVIR Pens Do Not Literally Infringe the '951 or '556 Cotapaxi Patents**

As is clear from the Statement of Facts, there are many substantial differences between the designs claimed in the Cotapaxi patents and each of the LAMISIL or FAMVIR pens.   Although Cotapaxi has the burden to prove substantial similarity under both the "ordinary observer" test and the "points of novelty" test, as explained below, Cotapaxi cannot satisfy either test as to either the LAMISIL or FAMVIR pens, and therefore as a matter of law cannot possibly prevail on the claims pled in its Complaint.   Accordingly, the Defendants are entitled to dismissal of the Complaint with prejudice.

**1.     The LAMISIL Pen Is Not "Substantially the Same" In Overall Appearance As the '951 or '556 Patent Designs**

Under the "ordinary observer" test, a finder of fact would need to conclude that the overall visual effect of the LAMISIL Pen is "substantially the same" as the patented designs, or that an ordinary purchaser would likely be deceived into confusing it with the patented designs.  Goodyear, 162 F.3d at 1118.  The many differences between LAMISIL Pen and the drawings of the '951 and '556 patents are readily apparent.

The grip areas of the LAMISIL Pen and the patented designs are significantly different. The LAMISIL Pen lacks the octopus suction disc protrusions of the '951 patent and lacks the rough-textured grip of the '556 patent.

Moreover, the pocket clip of the LAMISIL Pen differs markedly from the pocket clip of the '951 and '556 patents. As can be readily seen from a comparison of the pictures and drawings in the Statement of Facts above, the pocket clip of the LAMISIL Pen is not substantially rectangular like the pocket clip of the '951 and '556 patents, but is predominantly oval shaped with a squared end. In addition, the corners of the pocket clip of the LAMISIL Pen are sharply squared-off at substantially right angles, unlike the gently-rounded square pocket clip corners in the Cotapaxi patents.

Perhaps one of the most glaring differences between the LAMISIL Pen and the '951 and '556 patents is the surface of the pocket clip. The LAMISIL Pen contains a non-reflective printed logo. The pocket clip of the '951 and '556 patents, by stark contrast, comprises a transparent or refractory window surface.

In addition, the top of the click-top of the LAMISIL Pen has a squared shape and no button-like protrusion, in contrast to the half-round, half-square shape with button protrusion of the click-top in the Cotapaxi patented designs. Also completely absent from the LAMISIL pen is any internal sleeve housing on the

click-top portion where the click-top portion inserts into the body of the pen, as is present in the patented designs.

Given these many substantial differences and lack of any substantially similar features, no reasonable fact finder could conclude that the LAMISIL Pen is "substantially the same" in overall appearance to the designs disclosed in the '951 and '556 patents.   No reasonable fact finder could conclude that an ordinary observer would buy the LAMISIL Pen believing it to be the patented designs. Consequently, as a matter of law determinable on the face of the pleadings and exhibits together with the patents, photographs, and prior art references that may be considered on this motion, the LAMISIL Pen does not infringe either the '951 or '556 patent.

### 2.    The LAMISIL Pen Does Not Appropriate the Points of Novelty of Either the '951 or '556 Patent Designs

Although Cotapaxi's failure as a matter of law to meet the "ordinary observer" test of infringement is alone sufficient to entitle Defendants to dismissal, as a matter of law Cotapaxi's infringement claims as to the LAMISIL Pen also fail to meet the required "points of novelty" test.

As set forth in greater detail in the Statement of Facts, a number of ornamental elements of the designs depicted in the '951 and '556 patents were present in the prior art, and cannot serve as bases for comparison to the LAMISIL and FAMVIR pens to determine infringement.  Specifically, the Volk reference

disclosed a flat rectangular pocket clip with a rounded end and a click-top that appears from an axial view as having a rounded side and a squared side.  The pocket clip and click-top of the '951 and '556 patents have substantially the same shaping as the prior art Volk design, with the exception that they have a translucent or refractory window surface on the pocket clip face, and a button-like protrusion extending from the click-top.

Similarly, the Beneyto and Lecce references depict pen designs having a tapered comfort grip, the Beneyto reference additionally having the textured surface on the grip substantially similar to the grip in the '556 patent.  Beneyto, Cetera and Lecce also disclose annular rings at the top of the comfort grip at the junction between the comfort grip and the pen body.  The grip section of the '556 patent thus does not depict any ornamental novelty over the prior art, and the grip of the '951 patent exhibits novelty only in respect of the octopus suction disc protrusions on the comfort grip.

Further, the Cetera reference depicts the use of a collar or sleeve between a click-top mechanism and the pen body, thus rendering only the particular shape of the sleeve/collar in the '951 and '556 patents a point of novelty.  In addition, all of the references cited disclose pens having elongated cylindrical bodies, click-tops, tapered ends where nibs protrude when the click-tops are actuated, which are all features long held in common by ordinary click-top ballpoint pens.  None of these

general characteristics can serve as points of novelty against which to measure infringement of the '951 or '556 patents.

In view of the prior art discussed above, the points of novelty in the '951 patent consist essentially of: (1) the octopus suction disc grip, (2) the transparent or refractory window surface of the pocket clip, (3) the button-like protrusion on the end of the click-top, and (4) the particular shape of sleeve or collar at the junction of the click-top and the pen body.  The points of novelty of the '556 patent consist essentially of (1) the transparent or refractory window surface of the pocket clip, (2) the button-like protrusion on the end of the click-top, and (3) the particular shape of sleeve or collar at the junction of the click-top and the pen body.

The LAMISIL Pen does not appropriate <u>even one</u> of the points of novelty of either the '951 or '556 patents, much less all of them, as is required to infringe under the points of novelty test.  It is beyond dispute that the LAMISIL Pen does not have any structure that even arguably could be interpreted as: (1) an octopus suction disc grip, (2) a transparent or refractory window pocket clip surface, (3) a button-like protrusion on the end of its click-top, or (4) any sleeve or collar at the junction of the click-top and the pen body, much less the particular shape of collar that is the point of novelty in the patented designs.

Given that none of the points of novelty of either the '951 or '556 patents are even arguably present in the LAMISIL Pen design, the LAMISIL Pen "cannot, as a

matter of law, infringe." <u>Sun Hill</u>, 48 F.3d at 1198; <u>see also</u> <u>Goodyear</u>, 162 F.3d at 1121-22.

### 3. The FAMVIR Pen Is Not Substantially Similar to Either the '951 or '556 Patent Designs

Like the LAMISIL Pen, the FAMVIR Pen is quite distinct from the pen claimed in the figures of the '951 design patent. No finder of fact could conclude that the overall visual effect of the FAMVIR Pen is "substantially the same" as the patented designs, or that an ordinary purchaser would likely be deceived into confusing it with the patented designs. <u>Goodyear</u>, 162 F.3d at 1118.

The differences between the FAMVIR Pen and the patented designs fall into many of the same categories as the LAMISIL Pen. The grip area of the FAMVIR Pen is significantly different from the patented designs. The FAMVIR Pen lacks the octopus suction disc protrusions of the '951 patent and lacks the rough-textured grip of the '556 patent. Instead, the accused FAMVIR Pen has a smooth-surfaced comfort grip.

The pocket clip of the FAMVIR Pen also differs markedly from the pocket clip of the '951 and '556 patents, as it has a unique "bee" shape, and is not substantially rectangular like the pocket clip of the '951 and '556 patents. In addition, the end of the FAMVIR Pen pocket clip is semi-circular, unlike the gently-rounded square pocket clip corners in the Cotapaxi patents.

Like the LAMISIL Pen, the pocket clip of the FAMVIR Pen also lacks the transparent or refractory window surface claimed in the '951 and '556 patent designs.  Also completely absent from the FAMVIR Pen is any internal sleeve housing on the click-top portion where the click-top portion inserts into the body of the pen, as is present in the patented designs.

Given these many substantial differences and lack of substantially similar elements, no reasonable fact finder could conclude that the FAMVIR Pen is "substantially the same" in overall appearance to the designs claimed in the '951 and '556 patents.  Moreover, no reasonable fact finder could conclude that an ordinary observer would buy the FAMVIR Pen believing it to be the patented designs.  Consequently, as a matter of law determinable on the face of the pleadings and exhibits together with the patents, photographs, and prior art references that may be considered on this motion, the FAMVIR Pen does not infringe either the '951 or '556 patent.

### 4.    The FAMVIR Pen Does Not Appropriate the Points of Novelty of Either the '951 or '556 Patent Designs

Like the LAMISIL Pen, the FAMVIR Pen does not substantially appropriate all of the points of novelty of either the '951 or '556 patents, as is required to infringe under the points of novelty test.  It is beyond dispute that the FAMVIR Pen does not have any structure that even arguably could be interpreted as an octopus suction disc grip, a transparent or refractory pocket clip surface, button-

-25-

like protrusion on the end of its click-top, or any sleeve or collar at the junction of the click-top and the pen body, much less the particular shaped collar that is a point of novelty in the patented designs.

Given that the design of the FAMVIR Pen lacks the points of novelty of either the '951 or '556 patents, the FAMVIR Pen "cannot, as a matter of law, infringe."  Sun Hill, 48 F.3d at 1198; see also Goodyear, 162 F.3d at 1121-22.

### C.   The Doctrine of Equivalents Does Not Apply

As explained above, the LAMISIL and FAMVIR Pens are neither substantially the same in overall appearance to the designs in the '951 and '556 patents, nor does either pen appropriate the narrow points of novelty claimed in the '951 and '556 patents.  Because the doctrine of equivalents cannot be used to evade the "point of novelty" test, Sun Hill, 48 F.3d at 1199, Cotapaxi cannot resort to that doctrine here to overcome the indisputable fact that the LAMISIL and FAMVIR pens do not appropriate any of the points of novelty of the patented designs.  Accordingly, as a matter of law there can be no design infringement under the doctrine of equivalents.

## III.   IN THE ALTERNATIVE, THE COURT SHOULD CONVERT THE MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT AND GRANT SUMMARY JUDGMENT

In the alternative, this Court should convert the motion to dismiss to a motion for summary judgment pursuant to Rule 56.  This Court may convert a motion to dismiss to one for summary judgment without giving explicit notice where the party opposing the motion "should reasonably have recognized the possibility that the motion might be converted to one for summary judgment" and was not "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading."  Green v. Doukas, 205 F.3d 1322 (2d Cir. 2000).  Because Defendants are expressly requesting that this motion be converted if the Court declines to dismiss pursuant to Rule 12(b)(6), Plaintiff cannot reasonably argue that it lacked notice that this motion might be converted.  See Metrokane, 185 F.Supp. 2d at 325.

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Judgment is appropriate when the nonmovant offers no evidentiary support for an essential element on which it will bear the burden of proof at trial.  Id. "[S]ummary judgment is as appropriate in a patent case as in any other."  Avia

Group Int'l, Inc. v. L.A. Gear Ca., Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988)(design patent case); Mas v. Owens-Illinois Glass Co., 222 F.2d 889 (3d Cir. 1955)(affirming summary judgment dismissing design patent infringement complaint where accused devices lacked design patent's ornamentation).

Summary judgment is appropriate in this case because there are no genuine issues of material fact in dispute.  Defendants do not dispute that they sold the Accused Pens, photos of which were attached as exhibits to the complaint, and there is no dispute as to the shape and design of the Accused Pens.  No amount of discovery can shed any further light on whether the designs of the Accused Pens infringe the designs of the '951 and '556 patents.  No further judicial resources should be expended on Cotapaxi's baseless assertions.

In a similar and instructive case, a Judge in the Southern District of New York granted summary judgment of non-infringement of a design patent in favor of the defendant after converting a Rule 12(b)(6) motion to dismiss.  Metrokane, Inc., 185 F.Supp.2d 321.  In doing the simple comparison between the accused device and the drawings in the design patent-in-suit, in Metrokane the court found that "[there] is no substantial likelihood that an ordinary observer would confuse the two designs."  Id. at 330.  The Metrokane court therefore readily concluded as a matter of law that "[t]here is not the slightest evidence of an attempt by the defendant to appropriate any purely decorative features of the patented design."

Id.; see also Unette Corp. v. Unit Pack Co., Inc., Civ. A. No. 84-2166, 1985 WL 5989, *3 (D.N.J. March 8, 1985) (granting summary judgment of non-infringement of design patent), affirmed, 785 F.2d 1026 (Fed. Cir. 1986).  Similarly, given the many differences between the Accused Pens and the patented designs, no reasonable finder of fact could conclude that the Accused Pens infringe the patents in suit.  Accordingly, summary judgment of non-infringement should be granted.

## IV.   CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted, or, in the alternative, convert the motion to dismiss to a motion for summary judgment and grant a judgment of non-infringement to the Defendants.

Respectfully Submitted,

Dated:  December 29, 2006          **LOWENSTEIN SANDLER PC**

By:  s/ Stephen R. Buckingham
Stephen R. Buckingham
Matthew J. Atlas
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the Defendants served a copy of the above Brief on counsel for Plaintiffs, through Defendants' electronic filing of this document, by virtue of Plaintiffs' counsel's registration with the Court to receive electronic filings.


s/ Stephen R. Buckingham
Stephen R. Buckingham


Dated:  December 29, 2006