## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COTAPAXI CUSTOM DESIGN AND MANUFACTURING, LLC, | Document Electronically Filed |
| Plaintiff, | Civil Action No. 06-5183 (JAG) |
| -v- | Return Date: February 26, 2007 |
| CORPORATE EDGE, INC., et al., | |
| Defendants. | |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

---

**LOWENSTEIN SANDLER** PC
Attorneys at Law
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
Attorneys for Defendants

On the Brief:
   Stephen R. Buckingham
   Matthew J. Atlas

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..................................................................ii

I.     PRELIMINARY STATEMENT ............................................ 1

II.    DESIGN PATENTS PROVIDE VERY NARROW PROTECTION................................................................ 3

III.   MARKMAN HEARINGS ARE NOT MANDATORY ..................... 5

IV.   RULE 12(b)(6) IS APPROPRIATE TO DISMISS THIS CASE........ 6

V.    ALTERNATIVELY, SUMMARY JUDGMENT IS APPROPRIATE................................................................ 8

VI.   UNDER THE "ORDINARY OBSERVER" TEST, THERE IS NO INFRINGEMENT AS A MATTER OF LAW............................... 9

VII.  UNDER THE "POINTS OF NOVELTY" TEST, THERE IS NO INFRINGEMENT AS A MATTER OF LAW................................. 12

VIII. THE DOCTRINE OF EQUIVALENTS DOES NOT APPLY HERE ........................................................................ 14

IX.   CONCLUSION................................................................ 15

# TABLE OF AUTHORITIES

**Cases**  **Page**

Arminak & Assocs. v. Saint-Gobain Calmar, Inc., 424 F. Supp.2d 1188
(C.D. Cal. 2006) ............................................................................... 4

Ballard Medical Products v. Allegiance Healthcare Corp., 268 F.3d 1352
(Fed. Cir. 2001) ............................................................................... 5

Bell & Howard Document Management Prods. Co. v. Altek Sys., 132 F.3d
701 (Fed. Cir. 1997) ......................................................................... 6

Bush Indus., Inc. v. O'Sullivan Inuds., Inc., 772 F. Supp. 1442 (D. Del.
1991) ............................................................................................ 4, 13

Contessa Food Products, Inc. v. Conagra, Inc., 282 F.3d 1370 (Fed. Cir.
2002) ..................................................................................... 8, 10, 11

Deering Precision Instruments LLC v. Vector Dist. Sys., Inc., 347 F.3d 1314
(Fed. Cir. 2003) ............................................................................... 5

Dowling v. City of Philadelphia, 855 F.2d 136 (3d. Cir. 1988) ............................... 8

Eastern America Trio Products, Inc. v. Tang Electronics Corp., 97 F.
Supp.2d 395 (S.D.N.Y. 2000) ................................................... 10, 12

Elmer v. ICC Fabricating, Inc., 63 F.3d 1571 (Fed. Cir. 1995) ............... 4, 6, 10, 11

Gart v. Logitech, Inc., 254 F.3d 1334 (Fed. Cir. 2001) ............................................ 3

Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113
(Fed. Cir. 1998) ......................................................................... 13, 14

Gorham Co. v. White, 81 U.S. 511 (1871) ............................................................. 9

Intex Recreation Corp. v. Hasbro, Inc., 3 F. Supp.2d 1102 (C.D. Cal. 1998) ........ 12

Kellman v. The Coca-Cola Co., 280 F. Supp.2d. 670 (E.D. Mich. 2003) ................ 7

Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444 (Fed. Cir. 1994) ........................................................................ 4, 5, 10, 12

Lawman Armor Corp. v. Master Lock Co., 2004 WL 440177 (E.D. Pa. 2004) .................................................................................... 4

Lee v. Dayton-Hudson Corp., 838 F.2d 1186 (Fed. Cir. 1988) ............................. 14

In re Mann, 861 F.2d 1581 (Fed. Cir. 1988) ...................................................... 2, 3

Minka Lighting, Inc. v. Craftmade Int'l, Inc., 93 Fed. Appx. 214 (Fed. Cir. 2004) .................................................................................... 6, 14

Metrokane, Inc. v. Wine Enthusiast, 185 F. Supp.2d 321 (S.D.N.Y. 2002) ............ 4

Oddzon Products, Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed. Cir. 1997)3, 4, 10, 13

Pastore v. The Bell Telephone Co. of Pa., 24 F.3d 508 (3d. Cir. 1994) ................... 8

Street Flyers LLC v. Gen-X Sports, Inc., 2003 WL 21998960 (S.D.N.Y. 2003) .................................................................................... 4

Sun Hill Industries, Inc. v. Easter Unlimited, Inc., 48 F.3d 1193 (Fed. Cir. 1995) .................................................................................... 14, 15

Tropicana Products, Inc. v. Land O'Lakes, Inc., 286 F.Supp. 2d 343 (D. Del. 2003) .................................................................................... 4

Unette Corp. v. Unit Pack Co., Inc., 785 F.2d 1026 (Fed. Cir. 1986) ........... 4, 5, 10

Vigil v. Walt Disney Co., 1998 U.S. Dist. LEXIS 22853 (C.D. Cal. 1998) ............. 7

## I.    **PRELIMINARY STATEMENT**

Despite Cotapaxi's plea that the Court deny Defendants' motion because Cotapaxi needs discovery and a *Markman* hearing, resolution of this motion is really quite simple, and should not be delayed.  Under Federal Circuit law, it is appropriate and quite common for District Courts to determine by dispositive motion, based solely on a Judge's visual examination of differences between the drawings in the patent and photos of the accused product, that there is no infringement as a matter of law under the "ordinary observer" test.  That test mandates a finding of non-infringement unless the patented design and the accused design are "substantially the same" such that an ordinary observer would be deceived into purchasing the accused design believing it was the patented design.

Cotapaxi concedes that there is no dispute regarding which products are accused of infringement, and has submitted its own photographs confirming the lack of dispute between the parties as to the visual appearances of the accused pens.  No amount of discovery can alter the facts that the accused pens are strikingly different in appearance from the pens claimed in the patent drawings, and that no reasonable jury could possibly conclude that there is infringement. Cotapaxi's alleged need for discovery is undercut by its failure to submit the required Rule 56(f) affidavit explaining what discovery is desired and how it is

relevant to this motion.  Absent such an affidavit, Cotapaxi's conclusory request for discovery can be accorded no consideration by this Court.

Unlike utility patents, "[d]esign patents have almost no scope [and are] limited to what is shown in the application drawings." In re Mann, 861 F.2d 1581, 1582 (Fed. Cir. 1988).  When, as here, there are substantial differences between the overall appearances of the accused product and the claimed design, there can be no infringement as a matter of law.

In opposing Defendants' motion, Cotapaxi asks this Court to ignore essential design elements in its patents that dominate the overall visual appearance of the claimed designs, namely, the rough textured grip and octopus grip, and the rectangular reflective pocket clips.  Although Cotapaxi downplays these major differences, this Court cannot properly ignore the absence of these dominating design features in the accused pens.  Had Cotapaxi intended to exclude these features from its patent, it easily could have.  Because Plaintiff included these features in its patent claims, they must be considered in determining infringement.

The Court should reject Plaintiff's request that it be allowed to proceed to needless, expensive and wasteful discovery.  Because the essential facts--the patent drawings and the appearances of the accused pens--are undisputed and have been placed before the Court, this motion is ripe for adjudication.  Whether denominated as a ruling pursuant to Rule 12(b)(6) that there are no facts Cotapaxi could prove

that would permit the Court to conclude that the accused pens infringe the patents-in-suit, or as a ruling pursuant to Rule 56 that no reasonable jury could find that the accused pens infringe the patents-in-suit, under either standard Defendants are entitled as a matter of law to dismissal of this action with prejudice.

## II.   DESIGN PATENTS PROVIDE VERY NARROW PROTECTION

From reading Cotapaxi's Opposition Brief, one might believe that design patent claims afford as broad a scope of protection as utility patent claims. Such a belief would be entirely erroneous. The Federal Circuit has made clear that "[d]esign patents have almost no scope." In re Mann, 861 F.2d at 1582. Unlike utility patents, where drawings serve as mere examples of the invention, Gart v. Logitech, Inc., 254 F.3d 1334, 1341 (Fed. Cir. 2001)("drawings are not meant to represent 'the' invention or to limit the scope of coverage"), in a design patent, the claim "is limited to what is shown in the application drawings." Mann, 861 F.2d at 1582; Oddzon Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997)(scope of design patent limited "to its overall ornamental visual impression rather than to the broader general design concept").

One might also garner from Cotapaxi's Opposition Brief that design patent infringement is always a highly fact-intensive inquiry not susceptible to summary adjudication. Such a belief would also be wrong. In fact, "the court may resolve the issue of infringement of a design patent as a matter of law on the basis of mere

visual comparison of the patented design and the accused product." <u>Tropicana Products, Inc. v. Land O'Lakes, Inc.</u>, 286 F. Supp.2d 343, 345 (D. Del. 2003) (granting summary judgment); <u>accord</u> <u>Oddzon</u>, 122 F.3d at 1404 (affirming summary judgment; infringement determined by "construing the claim to the design, when appropriate, and then comparing it to the design of the accused device"); <u>Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.</u>, 997 F.2d 1444, 1451 (Fed. Cir. 1994)(affirming summary judgment, rejecting argument that "court erred by substituting its own judgment for that of a jury on the issue of overall similarity"); <u>Unette Corp. v. Unit Pack Co., Inc.</u>, 785 F.2d 1026, 1028-1029 (Fed. Cir. 1986)(affirming summary judgment based on comparison of product to patent drawings).[1]

Numerous Federal Courts have granted summary judgment in cases where the accused design was much closer in resemblance to the patented design than in the present case. <u>See, e.g., Oddzon</u>, 122 F.3d at 1399-1400 (compare drawings and

---

[1] <u>See also</u> <u>Arminak & Assocs. v. Saint-Gobain Calmar, Inc.</u>, 424 F. Supp.2d 1188, 1202 (C.D. Cal. 2006)(granting summary judgment because "the Court's independent comparison of the patented designs and the AA shroud convinces it that no reasonable buyer . . . would confuse them"); <u>Metrokane, Inc. v. Wine Enthusiast</u>, 185 F. Supp.2d 321, 328-30 (S.D.N.Y. 2002) (granting summary judgment based on comparison of patent drawings to accused product); <u>Lawman Armor Corp. v. Master Lock Co.</u>, 2004 WL 440177 at *5-8 (E.D. Pa. 2004)(same); <u>Street Flyers LLC v. Gen-X Sports, Inc.</u>, 2003 WL 21998960 at *14-15 (S.D.N.Y. 2003)(summary judgment granted based on two differences in design because "no reasonable fact finder could find infringement based on the undisputed facts"); <u>Bush Indus., Inc. v. O'Sullivan Indus., Inc.</u>, 772 F. Supp 1442, 1450-51 (D. Del. 1991)(same); <u>Cf.</u> <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571, 1578 (Fed. Cir. 1995)(reversing jury verdict because comparison of patent drawings and product revealed that "no reasonable jury could have concluded that the overall visual appearance of the claimed design is substantially similar to the accused design").

photos); <u>Unette</u>, 785 F.2d at 1028 (same); <u>Keystone</u> 997 F.2d at 1446-47 (same) and cases cited in footnote 1.

## III.   <u>MARKMAN HEARINGS ARE NOT MANDATORY</u>

Plaintiff contends at page 2 of its Opposition Brief that the Defendants are "leading the court into error" by asking the Court to rule on Defendants' motion without holding a "<u>Markman</u> hearing," and further contends at page 8 of its Brief that such a determination by the Court would "violate clear legal precedent." This is entirely false.  The Federal Circuit has made abundantly clear that:

> *Markman* does not require a district court to follow any particular procedure in conducting claim construction.  It merely holds that claim construction is the province of the court, not a jury. . . . . District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol.  As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.

<u>Ballard Medical Products v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358 (Fed. Cir. 2001); <u>see also</u> <u>Deering Precision Instruments LLC v. Vector Dist. Sys., Inc.</u>, 347 F.3d 1314, 1321 (Fed. Cir. 2003)(affirming summary judgment, observing that "[t]he district court did not conduct a separate *Markman* hearing").

In a design patent case, a separate <u>Markman</u> hearing would be of little value. To construe design patent claims, the Court need only describe in short narrative form the features depicted in the drawings of the patent in suit, to create a record as

to the Court's understanding of the drawings. <u>See, e.g., Elmer</u>, 67 F.3d at 1577.[2]
Defendants' Moving Brief lays out at pages 4 through 6 a narrative description of
the patented designs that would adequately serve as a proper claim construction.[3]

Plaintiff's assertion that the Court should not construe the claims until
Plaintiff has submitted "extrinsic evidence" is also unsupported. Plaintiff fails to
proffer the nature of any extrinsic evidence it believes might be relevant, and in
any event, extrinsic evidence may only be considered in claim construction when
there is a "genuine ambiguity" in the claims. <u>Bell & Howell Document
Management Prods. Co. v. Altek Sys.</u>, 132 F.3d 701, 706 (Fed.Cir.1997)(vacating
judgment based on erroneous reliance by District Court on extrinsic evidence to
construe claim). It is hard to conceive of a circumstance where ambiguity would
arise with respect to a design patent claim, which is defined by drawings, not
words. Plaintiff has not asserted the existence of any such ambiguity.

## IV.  <u>RULE 12(b)(6) IS APPROPRIATE TO DISMISS THIS CASE</u>

Plaintiff spends much of its Opposition Brief bemoaning the
inappropriateness of dismissing this case pursuant to Rule 12(b)(6), essentially

---

[2] <u>See also</u> <u>Minka Lighting, Inc. v. Craftmade Int'l, Inc.</u>, 93 Fed. Appx. 214 (Fed. Cir. 2004)
(unreported)(affirming summary judgment, holding "a district court need not always verbally
construe at length a design patent's drawings. The infringement analysis essentially involves
comparing the drawings to the accused device; a verbal description of the drawings does not
necessarily aid such a comparison.").

[3] Plaintiff's further contention at pages 2 and 7 that the Court cannot grant Defendants' motion
because it has not considered the prosecution file histories of the '951 and '556 patents is a red
herring. Those file histories, appended to the Supplemental Declaration of Matthew J. Atlas as
Exhibits A and B for the Court's review, contain nothing of any relevance to this motion.

arguing that the Court should close its eyes to the drawings of the '951 and '556 patents and photos of the accused pens that Plaintiff appended to its Complaint, and additional undisputed photographs of the accused pens submitted by both Plaintiff and Defendants in connection with this motion. Instead, Plaintiff asks this Court to accept without question Plaintiff's facially erroneous and conclusory allegations that the accused pens infringe the '951 and '556 patents, even though such allegations are contradicted by the documents it attached to its Complaint.

The many Third Circuit cases cited at pages 14-15 of the Defendants' Moving Brief make clear that, because this Court properly has before it the patents -in-suit and the undisputed photographs of the accused pens, it may consider these documents in ruling on the Defendants' Rule 12(b)(6) motion, notwithstanding the facially erroneous allegations of the Complaint. As other district courts have done in design patent cases, this Court may properly determine, based on the patents and the photos of the accused products, that there is no set of facts Plaintiff can prove that would result in a finding of the accused pens infringing the '951 or the '556 patents. See Kellman v. The Coca-Cola Co., 280 F. Supp.2d 670 (E.D. Mich. 2003)(dismissing design infringement suit under Rule 12(b)(6) based on lack of substantial similarity); Vigil v. Walt Disney Co., 1998 U.S. Dist. LEXIS 22853 (C.D. Cal. 1998)(same), aff'd, 2000 U.S. App. LEXIS 6231 (Fed. Cir. 2000).

## V.     **ALTERNATIVELY, SUMMARY JUDGMENT IS APPROPRIATE**

Rule 56(b) states unequivocally that a defendant may move "at any time" for summary judgment.   Plaintiff contends that summary judgment is premature because it needs to take discovery.  Opposition Brief at 3.  Nowhere in its Brief, however, does Plaintiff explain what kinds of discovery it needs nor how any such discovery would be relevant to this motion.

A party opposing summary judgment on the ground that discovery is needed must comply with Rule 56(f).  That Rule <u>requires</u> the party opposing the motion to file a <u>sworn affidavit</u> explaining with adequate detail <u>what</u> discovery is needed, <u>how</u> it is relevant to opposing the Defendants' motion, and <u>why</u> such information is not available to Plaintiff without discovery.   <u>See</u>, <u>e.g.</u>, <u>Pastore v. The Bell Telephone Co. of Pa.</u>, 24 F.3d 508, 510-11 (3d Cir. 1994); <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 139-40 (3d Cir. 1988).   Plaintiff has filed no such affidavit.   Therefore, the Court may not give any consideration to Plaintiff's argument that this motion is premature because Plaintiff needs discovery.

Plaintiff's further claim that it may need to present expert testimony is also unavailing.  Determining design patent infringement under the "ordinary observer" test requires evaluating similarity through the eyes of an <u>ordinary observer</u>, and <u>not</u> "from the viewpoint of an expert in design."  <u>Contessa Food Products, Inc. v. Conagra, Inc.</u>, 282 F.3d 1370, 1381-82 (Fed. Cir. 2002).

Plaintiff further argues that summary judgment is inappropriate because there are "factual questions" that cannot be resolved on this motion. Opposition Brief at 7. Plaintiff's Brief, however, does not identify a single fact issue that it believes is in dispute. There is no dispute as to what the patent drawings contain, and there is no dispute as to which products are accused of infringement and what their designs consist of. As the cases cited earlier in this Brief make clear, it is entirely proper for this Court to determine that there is no infringement as a matter of law based solely on a visual inspection and comparison of the photos of the accused pens and the patent drawings. Plaintiff's unexplained assertion that there are disputed fact questions deserves no credence. As many other district courts have done in design patent cases (see cases cited *supra* at page 4 and n.1), this Court may properly grant summary judgment because no reasonable jury could conclude that the accused pens infringe Plaintiff's patents.

## VI. UNDER THE "ORDINARY OBSERVER" TEST, THERE IS NO INFRINGEMENT AS A MATTER OF LAW

To prove infringement under the "ordinary observer" test, Plaintiff must prove that the patented design and the accused design are "substantially the same." Gorham Co. v. White, 81 U.S. 511, 528 (1871). The degree of similarity must be such that an "ordinary observer" would be deceived into purchasing the accused design believing it to be the patented design. Id. This test is not a "likelihood of confusion" test to determine if the accused product has indicia that would lead a

consumer to believe that the product originated from the plaintiff; instead it focuses solely on similarity of the designs. Unette, 785 F.2d at 1029. In judging whether the designs are "substantially the same," the Court must focus on the "overall similarity" and visual appearance as a whole. Keystone, 997 F.2d at 1450; Oddzon, 122 F.3d at 1405. This requires that "all of the ornamental features illustrated in the figures must be considered." Contessa, 282 F.3d at 1378.

In its Opposition Brief, however, Cotapaxi attempts to focus on and compare minor details in the accused pens and the patent drawings, submitting photos that isolate portions of the pens rather than show the pens as a whole, while glossing over the absence of major design elements and overall visual impression, simply stating that they are the same. As a matter of law, however, " [t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." Oddzon, 122 F.3d at 1405; see Keystone, 997 F.2d at 1450 (same); Elmer, 67 F.3d at 1578 ("focus is on the overall ornamental appearance . . . not selected ornamental features"); Eastern America Trio Products, Inc. v. Tang Electronics Corp., 97 F. Supp.2d 395, 408 (S.D.N.Y. 2000)("It is not enough . . . that defendants appropriate some of plaintiff's novel design elements").

With respect to the major design elements of its patents, Plaintiff blithely asserts at page 10 of its Brief that the accused pens have "almost identical grips" to the octopus and rough textured grips of the patents, and "very similar clips" to the

rectangular reflective pocket clip of the '556 and '951 patents.[4]    The Court, however, can see from the patent drawings that those dominant features of the '556 and '951 patents are not present in the accused pens.   Plaintiff cannot avoid dismissal by simply stating, despite the reality, that these features are the same.

In construing the patent claims, the Court must take into account <u>all</u> of the features in the patent drawings. <u>Contessa</u>, 282 F.3d at 1378.  Had Plaintiff desired to exclude the octopus and rough textured grips and the rectangular reflective pocket clip from the scope of the claimed designs, it was "permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." <u>Id.</u>; <u>Elmer</u>, 67 F.3d at 1577 (design claim "effectively limited" by inclusion of features).

The major differences between the accused pens and the patented designs are striking, and clearly predominate over any minor elements they may have in common.[5]  The Court can and should determine from a visual comparison of the

---

[4] Plaintiff does not dispute in its Brief that, in accordance with Patent Office guidelines, the patent drawings it submitted with its patent applications signify a rough textured grip in the '556 patent, and a reflective/refractory surface on the pocket clips claimed in both patents.

[5] Plaintiff accuses Defendants of misleading the Court by including photos in their Moving Brief that do not clearly show a shape at one end of the Famvir pen. That shape, a slight protrusion, has little impact on the overall appearance of the Famvir pen, but unfortunately was overlooked by the photographer that took the photos submitted by Defendants.  Defendants had no intention of misleading the Court, but recognize why Plaintiff devotes so much of its brief to this point: to divert the Court's attention from the many weaknesses in the merits of its case.

Similarly, Plaintiff accuses Defendants of "falsely" describing the California District Court's decision dismissing Plaintiff's earlier action.  Opp. Br. at 2 n.1.  That decision is attached as Exhibit C to the Supp. Decl.  The Court can draw its own conclusions from that decision, in

photos of the accused pens and the patent drawings that there is no infringement as a matter of law because no ordinary observer would be deceived into buying the accused pens believing them to be the patented designs.

## VII.   UNDER THE "POINTS OF NOVELTY" TEST, THERE IS NO INFRINGEMENT AS A MATTER OF LAW

If the Court concludes that Plaintiff cannot meet the "ordinary observer" test, it does not need to consider the "point of novelty" test. Keystone, 997 at 1451 (if no overall similarity, "no[ ] need to address point of novelty"). However, even under the point of novelty test, Plaintiff's claims fail as a matter of law.

Plaintiff's assertion at page 12 of its Brief that only one point of novelty needs to be present in the accused design to satisfy the "point of novelty" test is absurd. Although Plaintiff suggests that the Eastern America decision supports this proposition, it does no such thing. That case states only that not every point of novelty needs to be present in the accused design. Eastern America, 97 F. Supp.2d at 405. One other District Court, moreover, has held the exact opposite of what Plaintiff contends: that if even one point of novelty is not present in the accused design, the point of novelty test is not met. Intex Recreation Corp. v. Hasbro, Inc., 3 F. Supp.2d 1102, 1107 n.4 (C.D. Cal. 1998). Similarly, without deciding whether every point of novelty needs to be appropriated, the Federal Circuit has

---

which the court urged Plaintiff to dismiss rather than amend its complaint, and re-file in New Jersey, warning Plaintiff it might otherwise be subject to Rule 11 sanctions. Supp. Decl., Ex. C at 11.

held that the point of novelty test is not met where "several significant points of novelty of the [patented] design do not appear in the accused design." Goodyear Tire Co. v. Hercules Tire Co., 162 F.3d 1113, 1121 (Fed. Cir. 1998).

The Defendants cannot within the 15-page limit for this Reply Brief respond in detail to the long list of alleged "points of novelty" at pages 13-15 of Plaintiff's Opposition Brief, and Plaintiff's unsupportable assertion that all of those alleged points of novelty are present in the accused pens.[6]  A number of Plaintiff's purported "points of novelty" are so vaguely worded as to amount to prohibited "general design concepts." Oddzon, 122 F.3d at 1405.  Plaintiff adopts an approach that has aptly been described by one court as the "shopping list approach" to points of novelty, Bush Indus., 772 F. Supp at 1453, where numerous details are vaguely described in such a way as to encompass the accused products.

It is enough for this Court to conclude from its visual inspection of the patent drawings and accused pens, as did the Goodyear court, that the absence of several significant points of novelty defeats Plaintiff's claims under the point of novelty test.  It is indisputable that neither of the accused pens has the octopus grip

---

[6]  By way of examples, many of the "points of novelty" claimed by Plaintiff are in the prior art and not novel, including the "second raised round rib", present in the _Lecce_ and _Beneyto_ prior art references, the "bulging grip", present in the _Lecce_ reference (but actually not in Plaintiff's patented designs, which do not have "bulging" grips), and the "half-teardrop-shaped protrusion", present in the _Volk_ reference.  Moreover, many of Plaintiff's purported "points of novelty" are indisputably not present in the accused pens, including the "angled substantially straight extension," the "rounded edges on the bottom of the clip", the "collar with a generally wavy shape," the "round dome", the pocket clip with refractory surface described in vague general language, and the octopus grip described as a "multiplicity of raised round protrusions."

-13-

or rectangular refractory pocket clip required by the '951 patent, or the rough-textured grip or rectangular refractory pocket clip required by the '556 patent. As detailed in Defendants' Moving Brief, many other elements of the patented designs are also absent from the accused pens. Given that the designs of the accused pens indisputably lack significant points of novelty of the '951 and '556 patents, they "cannot, as a matter of law, infringe." Sun Hill Indus., Inc. v. Easter Unlimited, Inc., 48 F.3d 1193, 1198 (Fed. Cir. 1995); see also Goodyear, 162 F.3d at 1121-22.

## VIII. THE DOCTRINE OF EQUIVALENTS DOES NOT APPLY HERE

Plaintiff contends at page 17 of its Opposition Brief that the Court "must consider the Doctrine of Equivalents before finding there is no infringement." With the exception of one design element in each patent, the rough textured and octopus grips, Plaintiff identifies no design elements in the accused pens that it believes are equivalents to elements in the patent claims.

No separate doctrine of equivalents analysis is required or permitted under the "ordinary observer" test, because that test's "substantial similarity" standard "by its nature subsumes a doctrine of equivalents analysis." Minka, 93 Fed. Appx. at 217; Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988)(the "substantially the same test" of Gorham uses "words associated with equivalency"). Accordingly, if the Court does not reach the point of novelty test, it need not separately consider the doctrine of equivalents.

-14-

Moreover, although the doctrine of equivalents may apply under the point of novelty test when "the accused product includes features equivalent to the novel claimed design features", Sun Hill Indus., 48 F.3d at 1199, it cannot be used to evade the "point of novelty" test. Id. Here, the only elements Plaintiff claims are equivalents are the smooth grips of the accused pens, which Plaintiff contends at page 17 of its Brief are equivalent to the rough-textured grip required by the '556 patent and the octopus grip required by the '951 patent. Plaintiff cannot, however, evade the point of novelty test by claiming that a smooth-surfaced grip is equivalent to the very different rough-textured and octopus grips. See Sun Hill, 48 F.3d at 1199 (improper to consider non-shiny surface the equivalent of shiny surface). Were Defendants' grips of a slightly different texture from the rough texture of the '556 patent, or included, for example, hexagonal rings rather than the round rings of the '951 patent, perhaps Plaintiff might have an argument of equivalents. But where, as here, the accused pens wholly lack the design features Plaintiff has conceded are points of novelty, Plaintiff cannot avail itself of the doctrine of equivalents.

## IX.   **CONCLUSION**

For the reasons stated above and in the Defendants' Moving Brief, the Court should dismiss Plaintiff's Complaint, or, alternatively, grant summary judgment.

Respectfully Submitted,

Dated:  February 23, 2007          **LOWENSTEIN SANDLER PC**

By:  s/ Matthew J. Atlas
    Stephen R. Buckingham
    Matthew J. Atlas
    65 Livingston Avenue
    Roseland, New Jersey  07068
    973.597.2500