<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| COTAPAXI CUSTOM DESIGN AND MANUFACTURING, LLC, | : : | |
| Plaintiff, | : : | Civil Action No.  06-5183 (JAG) |
| v. | : : | **OPINION** |
| CORPORATE EDGE, INC., et al., | : : : | |
| Defendants. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion of Defendants Corporate Edge, Inc., Scott Levy, and Robyn Salzman ("Defendants"), to dismiss the Complaint filed by Plaintiff, Cotapaxi Custom Design and Manufacturing, LLC ("Plaintiff"), pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative, as permitted by Rule 12(b)(6), for summary judgment under FED. R. CIV. P. 56.

Plaintiff holds design patents for two ornamental designs of ball point pens, U.S. Patent No. D508,951 (filed Sept. 23, 2004) and U.S. Patent No. D521,556 (filed Oct. 12, 2004) ("'951" and "'556"). Plaintiff alleges that Defendants infringed the '951 and '556 patents pursuant to 35 U.S.C. §§ 271(a) and (b), by, among other things, making, using, importing, advertising, offering for sale, and selling pens that infringe Plaintiff's patented designs. Plaintiff alleges that Defendants did so without Plaintiff's authority or permission. Plaintiff alleges further, in Count

III, that Defendants "actively induc[ed] others" to make or utilize the infringing products. For the reasons set forth below, Defendants' motion to dismiss will be granted as to all counts of the Complaint.

I.      **Background**

Plaintiff, a Delaware limited liability company with its principal place of business located in Carlstadt, New Jersey, is a designer, importer, and distributor of various products, including ball point pens, used as promotional gifts by businesses. (Compl. ¶¶ 4, 14.) Defendants include Corporate Edge, Inc. ("Corporate Edge"), a New Jersey Corporation; Scott Levy, Corporate Edge's President and a resident of Short Hills, New Jersey; and Robyn Salzman, a sales representative at Corporate Edge, who, it is believed, resides in Woodbury, New York. (Id. at ¶¶ 5-7) (Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss at 1.)

In about 2004, Plaintiff filed for, and was subsequently issued, design patents for two ornamental designs of ball point pens.[1] (Compl. ¶¶ 15-16.) Plaintiff claims that, in the past, it has been a vendor of ball point pens, covered by Plaintiff's patents, for a large pharmaceutical company. (Id. at ¶ 17.) Plaintiff alleges that Defendants subsequently solicited the same pharmaceutical company's business. (Id. at ¶ 18.) Specifically, Defendants offered to supply the pharmaceutical company with ball point pens that are allegedly design copies of Plaintiff's patented pen designs, but at a lower price. (Id.) Plaintiff further claims that Defendants were successful in acquiring, fulfilling, and delivering those orders to the pharmaceutical company.[2]

---

[1] U.S. Patent Nos. D508,951 and D521,556 ("'951" and "'556"). Copies of the two patents are included in Plaintiff's Complaint as Exhibits A and B.

[2] Photographs of the two models of alleged design patent infringing pens are included in Plaintiff's Complaint as Exhibits C and D. The two pens are apparently promotional pens to be

2

(Id. at ¶ 20.)  Furthermore, Plaintiff alleges that Defendants "actively induced, and contributed to, the infringement of Plaintiff's patents by others."  (Id. at ¶ 21.)

Plaintiff claims that Defendants infringed the '951 and '556 patents by, among other things, making, using, importing, advertising, offering for sale, and selling pens that infringe Plaintiff's patented designs, pursuant to 35 U.S.C. §§ 271(a) and (b).  (Id. at ¶¶ 26, 35, 44.)  Plaintiff alleges that Defendants took these actions without Plaintiff's authority or permission, and induced others to infringe.  (Id.)

## II.     Legal Standard of Review for Motion to Dismiss

Defendants moved initially to dismiss Plaintiff's Complaint, pursuant to FED. R. CIV. P. 12(b)(6) or, in the alternative, for Summary Judgment under Rule 56.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Twombly, 127 S. Ct. at 1959.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Id.

---

distributed in support of branded drugs Lamisil ® and Famvir ® ("L-Pen and F-Pen").  Plaintiff claims that both the L-Pen and F-Pen infringe Plaintiff's '951 and '556 design patents.

3

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46, abrogated on other grounds. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

This Court's review of a motion to dismiss for failure to state a claim is limited to the contents of the complaint, including any attached exhibits. See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Caine v. Hardy, 943 F.2d 1406, 1411 n. 5 (5th Cir. 1991).

4

**III.     Legal Standard of Review for Design Patent Infringement**

Determining whether a product infringes upon a design patent requires a two-step analysis.  First, the Court must construe the design patent properly, as a matter of law. See Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995) (stating that "determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope" (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996))). Second, the patented design must be compared to the alleged infringing product in order to determine whether or not it infringes the design patent. See  Elmer, 67 F.3d at 1577.

Specifically, there are two distinct comparison tests that the patent infringement claim must satisfy to be successful: (a) the ordinary observer test, and (b) the point of novelty test. Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002).  Even though the ordinary observer test and the point of novelty test can lead to the same conclusion, it would be legal error to merge both tests and not separate the two as distinct analyses.  Id.

The standard under the ordinary observer test was set forth over a century ago by the Supreme Court of the United States:

> If in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to  purchase one supposing it to be the other, the first one patented is infringed by the other.

Gorham v. White, 81 U.S. 511, 528 (1871).  The ordinary observer test requires that an average person, not an expert, compare the patent drawings to the allegedly infringing product, and "any significant differences in configuration and general appearance, as they present themselves to the

average buyer of the article on inspection, will be sufficient to avoid infringement." <u>Laskowitz v Marie Designer, Inc.</u>, 119 F. Supp 541, 544-45 (S.D. Cal. 1954) (citing <u>Edison Elec. Appliance Co. v. Fitzgerald Mfg. Co.</u>, 32 F.2d 705, 706 (2d Cir. 1929)).

The point of novelty test asks "whether the accused design appropriates the points of novelty that distinguish the patent design from the prior art." <u>Contessa Food Prods., Inc.</u>, 282 F.3d at 1377. "To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the 'point of novelty' approach, which is to focus on those aspects of a design which render the design different from prior art designs." <u>Winner Int'l Corp. v. Wolo Mfg. Corp.</u>, 905 F.2d 375, 376 (Fed. Cir. 1990).

If either the ordinary observer test or the point of novelty test is not satisfied, there can be no design patent infringement. <u>Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.</u>, 157 F.3d 1311, 1323 (Fed. Cir. 1998).

**IV.     Claim Construction**

In order to construe Plaintiff's claim properly, this Court need only take judicial notice of the two patent drawings, as appended to Plaintiff's Complaint. "The United States Court of Appeals for the Federal Circuit has emphasized that claim construction is strictly within the purview of the Court to decide." <u>Lawman Armor Corp. v. Master Lock Co.</u>, No. 02-6605, 2004 U.S. Dist. LEXIS 3705, at *7 (E.D. Pa., March 11, 2004) (citing <u>Markman</u>, 52 F.3d at 983-84).

Design patents claims are construed as they are shown in the patent drawings, and there is usually no description of the design in words. <u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.</u>, 162 F.3d 1113, 1116 (Fed. Cir. 1998). Furthermore, when an area of patent design is a crowded field, as is the case with ornamental ball point pens, the patented design drawings

will be construed to a narrow scope of protection. See id. at 1121 (where the defendant appropriated the general appearance of the plaintiff's patented tire tread design, but the court affirmed a judgment of non-infringement because the court recognized that the art was crowded, and held the plaintiff's patented tire tread design to a narrow scope).

## V.     Discussion

Given the legal standards set forth above, the typical Rule 12(b)(6) analysis, which, after assuming all allegations to be true, analyzes whether plaintiff failed to state a cognizable cause of action, cannot apply here. In the design patent context, the facts alleged in the Complaint include the patent and the pictures of the infringing products. It is legitimate for this Court to determine that even if these alleged "facts" are true, or accurate, they still fail to state a claim upon which relief may be granted.[3]

In this instance, after visually comparing the drawings of the '951 and '556 patents (Compl. Exs. A and B) to the photographs of Defendants' L-Pen and F-Pen (Compl. Exs. C and D), this Court concludes that there is no set of factual assertions or allegations that could lead this Court to find for Plaintiff. Defendants have not infringed Plaintiff's patents. Under the ordinary

---

[3] The Federal Circuit has affirmed, on at least one occasion, the appropriateness of district courts determining, based on the patents and photographs of the allegedly infringing products, that there is no set of facts that a plaintiff can prove to justify a finding of infringement. Vigil v. Walt Disney Co., 232 F.3d 911 (Table) (Fed. Cir. 2000) ("We agree that the district court did not exceed its discretion in dismissing the action on the merits."). At least one other district court has also dismissed claims of patent infringement with prejudice on motions to dismiss. See Kellman v. Coca-Cola Co., 280 F. Supp. 2d 670 (E.D. Mich. 2003) (dismissing plaintiff's claim for design patent infringement on a motion to dismiss). Most importantly, in the design patent context, the patent and the photographs of the allegedly infringing product are sufficient for this Court to determine if "it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Hughes v. Rowe, 449 U.S. 5, 10 (1980).

observer test, the '951 and '556 patents are not substantially similar to the L-Pen and F-Pen. As such, an ordinary observer would not be induced to mistake one for the other. See Gorham, 81 U.S. at 528.

Several functional ball point pen features, such as the cylindrical shape, the tapered writing tip, the comfort grip area, and the pocket clip, are common to both the '951 and '556 patents, and the L-Pen and F-Pen. However, those functional features are also common to many other ball point pen products that existed prior to the issuance of the '951 and '556 patents. This Court may not consider these common functional features when using the ordinary observer test to compare the pens. "[A] design patent only protects the novel, ornamental aspects of the design as shown in the patent" and not the functional features and aspects. Metrokane, Inc., v. Wine Enthusiast, 185 F. Supp. 2d 321, 326-27 (S.D.N.Y. 2002).

Both the '951 and '556 patents, as well as the L-Pen and F-Pen, have comfort grip areas near the writing tip. But, there are differences between them that an ordinary observer would easily detect. The '951 patent illustrates a grip area with five parallel rows of raised rubber, circular protrusions. The '556 patent shows a grip area covered with a rough textured material. Neither the L-Pen or the F-Pen incorporates these distinguishing point of novelty features. Both the L-Pen and the F-Pen incorporate a thicker, more elliptically-shaped grip area that is covered with what appears to be a smooth rubber material.

Furthermore, both the '951 and '556 patents have distinguishing point of novelty features in the design of the pocket clip that do not appear in Defendants' pens. The '951 and '556 patents have an identical pocket clip design, showing a rectangular-shaped clip that is slightly wider than the pen barrel with a curved end. The clip consists of a thin, rectangular frame over

the full face of the clip, and has a secondary flat material set in the frame.  This secondary material is either a refractory or transparent surface.

The L-Pen and the F-Pen pocket clips, on the other hand, have distinctly different designs from the patented designs.  The L-Pen pocket clip is made of a single, solid opaque material with both the drug product name and cartoon logo imprinted on it.  The L-Pen also has a widened oval shape for the upper half of the pocket clip to accommodate the logo image.  The bottom end of the L-Pen pocket clip is nearly flat, but with a very slight curvature to it.

Similarly, the F-Pen pocket clip is also a solid, single opaque material with the drug product name and logo imprinted on it.  However, the F-Pen incorporates a cartoon image of a bee imprinted on the upper half of the pocket clip, where the shape of the clip itself conforms to the shape of the bee image.  The bottom end of the F-Pen pocket clip is semi-circular in shape.

This Court can, as a matter of law, conduct its own visual inspection and declare that a product does not infringe on a design patent.  Lawman Armor Corp., 2004 U.S. Dist. LEXIS 3705, at *18 (citing Tropicana Prods., Inc. v. Land O'Lakes, Inc., 286 F. Supp. 2d 343, 345 (D. Del. 2003); see also Goodyear Tire & Rubber Co., 162 F.3d at 1122 (where the Federal Circuit affirmed a district court's non-infringement judgment of a design patent, on summary judgment, based on the district court's visual analysis comparing the patented design to the alleged infringing product).  Because of the obvious and noticeable differences in appearance, this Court concludes that Defendants' L-Pen and F-Pen do not infringe on Plaintiff's patents '951 and '556, under the ordinary observer test.  Plaintiff's failure to present facts which satisfy the ordinary observer test is, alone, fatal to Plaintiff's claims of infringement.  See Unidynamics, 157 F.3d at 1323.

This Court need not conclusively hold that the '951 and '556 patents infringement claims fail the point of novelty test, given that the claims did not survive the ordinary observer test. See Unidynamics Corp., 157 F.3d at 1323. However, this Court's analysis of the features that appear on the '951 and '556 patents reveals that all of the features are either (1) functional, (2) show up in the prior art cited in Plaintiff's patents, or (3) are points of novelty that do not appear on Defendants' products. Thus, this court will briefly discuss the claims under the point of novelty test.

The point of novelty test is distinct from the ordinary observer test. As noted earlier, these tests are conjunctive. If Plaintiff fails to show design patents infringement on either basis, then the claim of infringement must fail. Plaintiff's allegations relating to the design patents fail because the claims do not survive the ordinary observer test. Even if it were determined that this court erred on the ordinary observer test, the claim would still fail based on the point of novelty test.

To make a finding of infringement, the point of novelty test requires that the accused product include substantially the same points of novelty that distinguish the design patent in question, from any prior art. Goodyear Tire & Rubber Co., 162 F.3d at 1118. In the instant case, to satisfy the point of novelty test, the L-Pen and the F-Pen would have to contain substantially the same ornamental features that distinguish the '951 and '556 patents from the prior art.

Even if this Court were to consider, as a single point of novelty appearing both in the '951 and ' 556 patents, as well as the L-Pen and F-Pen, the combination of having both a) a comfort grip area on the pen barrel and b) a wide pocket clip that is integrated into the pen's click-top, there would be no infringement. Several prior patents that Plaintiff referenced

incorporate this same combined set of features in their pens. So, as a point of novelty, this set of features would be considered prior art.[4] The Federal Circuit has held that, in a design patent infringement action, it will affirm a judgment of non-infringement if several significant points of novelty do not appear in an accused design. Goodyear Tire & Rubber Co., 162 F.3d at1118. The Federal Circuit will do so even if there are some apparent similarities between the plaintiff's and the defendant's designs. Id.

Even though this Court believes that the point of novelty test further substantiates the conclusion of non-infringement, this Court shall refrain from making a definitive conclusion on this test. The comparison of Plaintiff's patented designs with the L-Pen and F-Pen was limited to the review of photographs shown in Exhibits A, B, C and D of the Complaint. Those photographs may not have revealed every possible point of novelty that exists in Defendants' pen products.[5]

Plaintiff's allegations in support of Count III center around the Defendant's actions in promoting and producing the L-Pen and the F-Pen. This Court finds that those items do not infringe Plaintiff's patents, so Defendants cannot have caused others to induce infringement. Because this Court finds that there is no infringement, Plaintiff's claim in Count III, that Defendants induced others to infringe the patent, also fails.

---

[4] Patents cited in either Plaintiff's '951 or '556 patent histories include U.S. Patent No. D495,365 (filed Jan. 14, 2004), U.S. Patent No. D498,261 (filed Dec. 17, 2003), and U.S. Patent No. D500,793 (filed Dec. 23, 2003).

[5] In its opposition, Plaintiff submits photographs of Defendants' pens. Plaintiff argues that these photographs support the infringement claim based on the point of novelty test. This Court disagrees. In any event, the matter is moot because Plaintiff fails to meet the ordinary observer test. This Court reviewed the photographs, and nothing in the photographs or the retort by Defendants reflect that infringement occurred.

## VI. Conclusion

For the reasons stated above, this Court, relying solely on the Complaint and documents attached thereto, or specifically referenced therein, and matters of public record, concludes that Defendants' L-Pen and F-Pen do not infringe Plaintiff's '951 and '556 patents, pursuant to 35 U.S.C. § 271(a).  Furthermore, this Court concludes that Defendants did not induce patent infringement of Plaintiff's '951 and '556 patents, pursuant to 35 U.S.C. § 271(b).  Defendants' motion to dismiss is, therefore, granted, with prejudice.


Dated: September 28, 2007

     S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.